FILED
2007 Feb-23  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN  DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **5:02-cv-0840-UWC** |
| **ONE PARCEL, CONSISTING OF** ) | |
| **APPROXIMATELY EIGHT** ) | |
| **ACRES MORE OR LESS OF** ) | |
| **REAL PROPERTY AND** ) | |
| **RESIDENCE LOCATED AT 447** ) | |
| **CONWAY ROAD, DECATUR,** ) | |
| **ALABAMA, WITH ALL** ) | |
| **IMPROVEMENTS,** ) | |
| **APPURTENANCES AND** ) | |
| **ATTACHMENTS THERETO,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Presently before the Court is Plaintiff's Motion For Summary Judgment in an *In Rem* action against  Defendant Property.  This matter was assigned to a Magistrate Judge who issued a report of Findings and Recommendation.  (*See* Doc. 56.)  The magistrate judge recommended that the government's motion for summary judgment be granted subject to the claim of third-party claimant, Taylor, Bean & Whitaker Mortgage Corporation.  In accordance with Federal Rule of Civil Procedure 72(b), this Court now rejects the Magistrate's findings and recommendation based upon a *de novo* review of the

1

record.

This Court has determined that the government's motion for summary judgment is due to be denied in part and granted in part. The government's motion is due to denied with respect to the legal interest, as well as the equitable interest held by Julia K. Clark, as a result of her divorce decree - but subject to the claim of third-party claimant, Taylor, Bean & Whitaker Mortgage Corporation.

## FACTUAL BACKGROUND

On July 18, 2000, Tollie and Julia Clark divorced. At the time of the divorce, the parties owned two parcels of real property, namely, 215 Mesa Verde Road and 447 Conway Road. In the divorce decree, Julia was awarded the Mesa Verde property, which had a mortgage secured to build a house on the Conway road property. Tollie was awarded the Conway property, which was unencumbered. Because the property settlement was not equitable, however, the divorce decree required that the Conway property be mortgaged with the proceeds used to pay off at least one-half of the Mesa Verde property. In the event Tollie was unable to obtain financing for the Conway property, he was to pay Julia ½ of the monthly mortgage payments on the Mesa Verde property. These monthly payments were described in the divorce decree as an "alimony obligation," which was to terminate at any time the mortgage was satisfied.

Later, Tollie and Julia contend that they made an oral agreement (inconsistent with the divorce decree) that Tollie would simply convey his entire interest in the Conway

property to Julia because Tollie had been unable to pay Julia the money that he owed her in accordance with the divorce decree.  It is undisputed that Tollie failed to comply with the divorce decree requirements to mortgage the Conway property and make the required payments to Julia.  Additionally, it is undisputed that <u>neither party executed any title or deed documents that would have transferred ownership of the two properties consistent with the divorce agreement</u>.

On August 6, 2001, Tollie was arrested, and drugs were seized at the Conway property.  There is no evidence that Julia was aware, prior to Tollie's arrest, that this property was being used for any criminal activity.  Two days after the arrest, Tollie memorialized the alleged oral agreement with Julia by conveying his interest in the Conway property to Julia by quit-claim deed.  Julia recorded the deed.

In the Fall of 2001, when Julia sold the Mesa Verde property, Tollie, who was still technically an owner of the property, was required to execute the closing documents along with Julia.  In June 2002, Julia took out a $60,000 loan by mortgage on the Conway property through Taylor, Bean & Whitaker Mortgage Corporation.

On April 3, 2002, the United States filed this civil action for forfeiture of the Conway property because the property was used to facilitate the commission of a crime. The United States now moves for summary judgment, seeking forfeiture of the entire Conway property.

The question presented in this case is whether under the Civil Asset Forfeiture

Reform Act (CAFRA), 18 U.S.C. Section 983(d), Julia Clark is an "innocent owner" due at least a portion of the forfeiture when the undisputed facts show that: a) she did not know that the property was being used for criminal activities until after Tollie's arrest; b) she had a partial interest in the property by operation of state law in a final judgment of divorce prior to her knowledge of any wrongdoing; and c) she had the entire interest in the property conveyed to her by quit-claim deed after Tollie's arrest and with full knowledge that the property was subject to forfeiture.

The answer, in short, is that the definition of "innocent owner" includes a party with a valid legal interest in the property, as well as an equitable interest in the proceeds of a sale or mortgage of the subject property as ordered by a final judgment of divorce. In enacting CAFRA, Congress did not intend for the forfeiture statute to preempt state laws governing family property arrangements.

## LAW

Title 21 U.S.C. Section 881(a)(7) authorizes the forfeiture of property used to commit or facilitate a felony. However, an innocent owner's interest in the property shall not be forfeited. 18 U.S.C. § 983(d). The purpose and design of 18 U.S.C. Section 983, the Civil Asset Forfeiture Reform Act of 2000, ("CAFRA"), was "to increase the due process safeguards for property owners whose property has been seized" by amending and expanding rights under the innocent owner defense. *See* H. R. Rep. No.106-192, at 2,

4

21-26 (1999).  The statute was designed to give owners, innocent of any wrongdoing, the

means to recover their property and make themselves whole after government seizures.

*Id.*  An innocent, legitimate ownership interest created through a divorce was

contemplated in the congressional proceedings.  *Id.*

"Both theory and the precedents of [the Supreme] Court teach us solicitude for

state interests, particularly in the field of family and family-property arrangements."

*United States v. 15621 S.W. 209th Ave.*, 894 F.2d 1511, 1516 (11th Cir. 1990) (quoting

*United States v. Yazell,* 382 U.S. 341, 352 (1966)).

> "It is far from clear that Congress intended the forfeiture statute to preempt
> state laws governing family property arrangements.  The Supreme Court has
> said in another context that such laws may be overridden by federal courts
> only where "clear and substantial interests of the National Government,
> which cannot be served consistently with respect for such state interests in
> the field of family and family-property arrangements, will suffer major
> damage if the state law is applied." *United States v. Yazell,* 382 U.S. 341,
> 352 (1966). . . .  The two primary federal interests underlying the forfeiture
> statute are the protection of innocent owners and the deterrence of drug
> crimes.  As to the former, courts evaluating an innocent owner defense must
> consider the importance [of] state-law-created family property rights . . . .

*United States. v. 221 Dana Avenue,* 239 F.3d 78, 89 (1st Cir. 2001) (analyzing the civil

forfeiture statute, 21 USCA Section 881, prior to the 2000 CAFRA amendment and

stating that "The legislative history . . . instructs us that "[t]he term 'owner' should be

broadly interpreted to include any person with a recognizable legal or equitable interest in

the property seized." )

In a divorce proceeding, the Alabama courts clearly have the power to use any

5

reasonable means to effect a just property settlement and adjust the equities between the parties.  Ala. Code 1975 Section 35-6-20; *Prosch v. Prosch*, 249 So. 2d 855 (Ala. Civ. App. 1971).

## ANALYSIS

It is an undisputed fact of this case that Julia did not know that the Conway property was being used for criminal activities when they occurred.  Julia learned of the criminal activities only upon the arrest of her ex-husband.  At the time of Tollie's arrest, Julia still held a legal interest in the property because she and Tollie had not executed the documents necessary to transfer full ownership to Tollie.

Additionally, consistent with the divorce decree, she held an interest in any proceeds from a sale or mortgage on the Conway property.  The intent of Julia and Tollie's divorce settlement agreement, which was incorporated into a Judgment of Divorce, is clear.  To effectuate Julia's share of the marital assets and as an equitable division of property, the divorce agreement dictated that Tollie take out a mortgage loan on the Conway property and pay Julia at least one half the amount owed on the Mesa Verde property.  Until such time as Tollie completed this transaction, he was to make monthly alimony payments to Julia in the amount of one half the mortgage payments on the Mesa Verde property.  These obligations created an equitable interest for Julia in the Conway property.  Indeed, because Tollie was ultimately incapable of paying Julia alimony - an event that the parties and the circuit court judge undoubtedly predicted - the

6

unencumbered value of the Conway property created the only avenue to make Julia financially whole in the aftermath of the divorce.  Thus, Julia's equitable interest in the Conway property is indisputable.

It is clear that federal interests would *not* suffer any damage from applying state law and denying full forfeiture because the proceeds from the property are necessary to satisfy the state circuit court divorce judgment.  *See Yazell*, 382 U.S. at 352-53 (noting that state family law rights should not be disturbed in the absence of clear federal directives to the contrary).  The state circuit courts are empowered to convey any type of property interest in order to achieve an equitable distribution of property upon the dissolution of a marriage.  *Prosch v. Prosch*, 249 So. 2d 855, 860 (Ala. Civ. App. 1971).

The federal purpose of deterrence embodied in CAFRA is not served in this case because:  a) Julia is an ex-spouse *not* a family member or friend who is being used by the criminal defendant to circumvent the intent of the statute and Julia is undisputedly an innocent party with no knowledge of the criminal activity or knowledge that the property was subject to forfeiture prior to the divorce.  In other words, no deterrence interest would be furthered by rejecting Julia's innocent owner's defense because there is no risk that the wrongdoer would enjoy the property or receive any benefit from it.  The legislative history shows that opponents of CAFRA were concerned about fraud and the potential for criminals to use the innocent owner provisions to shield their property interests.  Neither argument is relevant under the facts of this case.  *See* H. R. Rep. No. 106-192.

7

In analyzing the application of the "innocent owner" defense, "the term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." *See United States. v. 221 Dana Avenue,* 239 F.3d 78 at 89 (analyzing the civil forfeiture statute, 21 USCA Section 881, prior to the 2000 CAFRA amendment).  Pursuant to state law, Julia held a legal interest in the property, as well as a recognizable equitable interest.

Finally, under CAFRA, Julia's claim to the property cannot be denied on the ground that she gave nothing of value in exchange for the property because she acquired her interest in the property through marriage and divorce.  *See* 21 U.S.C. § 983(d)(3)(B)(iv).

In conclusion, Julia's interest in the Conway property would appear to be precisely the kind of interest that Congress meant to protect in creating an innocent owner defense to civil forfeiture.

## CONCLUSION

The government's motion for summary judgment is due to be denied in part, and granted in part.  Julia, in order to be made whole, is due an amount equal to the property distribution that she should have received as a result of the divorce decree: a) one half the total amount she paid on the Mesa Verde property mortgage from the date of the divorce, July 18, 2000, through the date she satisfied the mortgage on the Messa Verde property;

8

<u>and</u> b) one half the mortgage on the Messa Verde property: $39,018.50.[1]

The Court will enter an order embodying these conclusions and granting the appropriate relief shortly.

**The Clerk of the Court shall mail a copy of this Memorandum Opinion to all attorneys of record who have not registered for electronic filing and mail a copy directly to Julia K. Clark at:**

**447 Conway Road**
**Decatur, Alabama, 35603.**

Done this 23rd day of February, 2007.

_____
U.W. Clemon
United States District Judge

---

[1] According to the divorce decree, Tollie was to take out a mortgage on the Conway property in an amount equal to at least one half the mortgage balance on the Mesa Verde property and remit that amount to Julia.  Upon the sale of the Mesa Verde property, Julia satisfied a mortgage loan in the amount of $78,037 (rounded to the nearest dollar).  One half this mortgage loan amount equals $39,018.50.

9